IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS CUNNINGHAM, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:05CV1460 CAS (AGF) |
| | ) | |
| DON ROPER, | ) | |
| | ) | |
| Respondent. | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the petition of Missouri state prisoner Dennis Cunningham for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action was referred to the undersigned Magistrate Judge under 28 U.S.C. § 636(b) for recommended disposition. Respondent argues that the petition should be dismissed because the state courts' adjudication of Petitioner's claims was factually and legally reasonable. For the reasons set forth below, the Court recommends that habeas relief be denied.

On June 16, 1999, a jury found Petitioner guilty of one count of first-degree murder and one count of a related armed criminal action. The charges arose out of the death of La Carlos Harnes, who died of head trauma one week after having been beaten on April 12, 1998 with a metal bat. On August 9, 1999, the state court sentenced Petitioner (who was then 26 years old) as a prior and persistent offender to concurrent terms of life imprisonment without the possibility of parole, and life imprisonment, respectively. On July 18, 2000, the convictions and sentences were summarily affirmed

1

on direct appeal.

On September 2, 1999, Petitioner filed a motion for post-conviction relief in state court, which proceedings were stayed pending the completion of proceedings on the direct appeal. Following an evidentiary hearing, post-conviction relief was denied, and this denial was affirmed on appeal on February 15, 2005. Petitioner filed the present federal habeas action pro se on September 9, 2005, claiming that his constitutional rights were violated in the following ways:

> (1) defense counsel rendered ineffective assistance by not conveying to Petitioner a plea offer by the State;
>
> (2) Petitioner was denied a fair trial by the prosecutor's comments during closing argument equating "deliberation," an element of first-degree murder under Missouri law, with making decisions; and
>
> (3) defense counsel rendered ineffective assistance in not objecting to the prosecutor's definition of "deliberation."

Respondent argues that habeas relief should be denied because the state courts' adjudication of these claims was legally and factually reasonable. Respondent also argues that this Court is procedurally barred from considering the merits of Petitioner's second claim because Petitioner procedurally defaulted this claim in state court.

## BACKGROUND

### Indictment, Plea Offer, and Trial

Petitioner was indicted on June 11, 1998. Trial was eventually set to commence on June 14, 1999. By letter dated June 2, 1999, to Petitioner's retained attorney, the State conveyed a plea offer that if Petitioner pled guilty, the State would recommend a sentence of life imprisonment with the possibility of parole, but if the matter went to trial, the State

would seek a sentence of life without the possibility of parole.[1] (Resp't Ex. F at 39.) The offer was never accepted and trial began as scheduled.

The evidence at trial showed that Petitioner learned on Saturday, April 11, 1998, that his 11-year old niece, with whom he was very close, had accused the victim, who was a neighbor and family friend of the niece's family, of sexually abusing her over a period of some months. The next morning, Petitioner went to his sister's house, and his sister told him that she had taken his niece to the hospital the previous day, and that it was confirmed that his niece had been sexually abused. Petitioner, who had been a victim of sexual abuse as a child, was very upset by the news. He stayed at his sister's house, where he ate, played with his young nephews, and bathed. He thereafter saw the victim twice that day. The second time that he saw the victim, at about 2:00 p.m., Petitioner took a metal baseball bat and walked to where the victim was sitting outside, about one block away. Petitioner warned the victim to have no further contact with Petitioner's niece, and then Petitioner hit the victim in the head with the bat four times. The incident took place in front of two of the victim's friends. The victim fell into a coma and died a week later. Petitioner testified on his own behalf, repeatedly stating that he did not intend to kill the victim, only to hurt him and teach him a lesson regarding his abusive conduct toward Petitioner's niece. Petitioner testified that when he saw the victim the time that he went after him with the bat, he (Petitioner) got very upset and experienced flashbacks of his own abuse as a child. He also testified that while he was hitting the victim with the

---

[1] Under Missouri law, the minimum term of imprisonment that must be served when sentenced to life is 30 years. Mo. Rev. Stat. § 558.019.4.

bat, he (Petitioner) "blacked out."

During closing argument, the prosecutor stated as follows:

> And the third [element of first-degree murder] is deliberation. That's the third element. The Defendant did so after deliberation. And this is important. Deliberation is defined for you here by [the trial court]. It says, "Cool reflection upon the matter for any length of time, no matter how brief." That's the legal definition of deliberation. Cool reflection for any length of time.
>
> So you can deliberate in a second, according to this definition. We have a lot more than that here. We've heard evidence that the defendant knew about these [sexual abuse] allegations Friday night. This assault took place on Sunday at about 2:00 in the afternoon. On Friday night he first heard about it. He certainly heard about it and knew about it and talked to his sister when she was crying on the phone Saturday night. So we have all those hours.
>
> And how do we know that he was cool during that time? Look at what he did. He came over, he ate pizza, he played with his nephews, he was planning on going to a movie. He was going to go to a movie. He even saw [the victim] once and didn't do anything.
>
> Ladies and gentlemen, this is first degree murder. This is a man who wanted to kill [the victim] because he was mad at him. There's no question about what his intent was.
>
> And there's no question about his deliberation. Remember what he said? My last question to him. I said, "Mr. Cunningham, what in the world did you think was going to happen when you hit somebody with a baseball bat four times in their head? They're convulsing, their blood is everywhere. What do you think is going to happen?" And he said, "Well, I just wanted to mess him up and have him go to the hospital." Oh. We don't have blackouts. We have some thinking about what they're doing. He's thinking about what he's doing. There's no blackout here, guys. There's lots of deliberation.
>
> I wrote down there "decisions." Deliberation means decisions. He had a decision to make. Many decisions along the way. He decided to leave the house with the baseball bat. He decided to take basically a very leisurely walk a considerable distance . . . with that bat. He decided to look and see where was the -- where was the victim. He looked down . . . where

4

> he thought he would be. He wasn't there. . . . He could have stopped then
> and said, "Oh, my God, what am I doing?" No. He decided to keep going.

(Doc. #14 at 321-23.) Defense counsel did not object to any of these comments by the prosecutor, and the matter was not later raised in Petitioner's motion for a new trial. (Resp't Ex. A at 121-27.)

The jury was instructed on both first-degree murder and second-degree murder. (Resp't Ex. A at 73-74.) Under Missouri law, finding a defendant guilty of first-degree murder requires a finding that he "knowingly cause[d] the death of another person after deliberation upon the matter." Mo. Rev. Stat. § 565.020. "Deliberation" is defined as "cool reflection for any length of time no matter how brief." Id. § 565.002(3). Second-degree murder does not require "deliberation." Id. § 565.021. Consistent with the statutory definition, the trial court, in the first-degree murder instruction, defined "deliberation" as "cool reflection upon the matter for any length of time no matter how brief." (Resp't's Ex. A at 73.) The trial court refused Petitioner's proposed instructions on manslaughter (second-degree murder, except caused under the influence of sudden passion) and involuntary manslaughter.

**Direct Appeal**

Petitioner raised two points on direct appeal. He argued (1) that the evidence was insufficient to support the conviction for first-degree murder because the element of "deliberation" was not established, and (2) that the trial court plainly erred in not sua sponte striking the prosecutor's closing argument that "deliberation meant decisions." (Resp't Ex. C.) On July 18, 2000, the Missouri Court of Appeals summarily affirmed the

convictions and sentences. (Resp't Ex. E.)

**Post-conviction Proceedings**

In his amended motion for post-conviction relief, prepared with the assistance of appointed counsel, Petitioner asserted that, among other claims, he was deprived of his federal constitutional rights to due process and the effective assistance of trial counsel by the failure of his trial counsel to inform him of the State's plea offer. Petitioner asserted that had his counsel conveyed the State's offer to him, Petitioner would have accepted it, and the trial court would have accepted the plea. (Resp't Ex. F at 24-27.)

Petitioner also claimed that his trial counsel was ineffective for failing to object when the prosecutor defined "deliberation" in closing argument as "decisions." Trial counsel thus failed to obtain a corrective ruling and failed to preserve the matter for plenary review on appeal. Petitioner argued that a reasonably competent attorney would have objected, and that Petitioner was prejudiced by his counsel's failure to do so, as the comments were not corrected for the jury, and Petitioner was limited on direct appeal to the more stringent plain-error review of the matter.[2] Petitioner maintained that had the issue been properly preserved for review, the appellate court would have reversed

---

[2] Under Missouri law, where a claim of error in a criminal case has been properly preserved for appellate review, the Missouri Court of Appeals will reverse a decision of the trial court if an abuse of discretion is found. Where a prosecutor's comments are not objected to at trial and/or raised in a motion for a new trial, appellate review of a claim that the comments were improper is discretionary and only for plain error. Plain errors are errors that are "evident, obvious and clear" and that resulted in "manifest injustice or a miscarriage of justice." State v. Joos, 218 S.W.3d 543, 546 (Mo. Ct. App. 2007).

6

Petitioner's convictions. Id. at 30-35.[3]

A hearing was held on June 30, 2003, at which Petitioner testified that he met with his trial counsel two or three times prior to trial, for approximately 15 to 20 minutes each time. He testified that during their discussions, the issue of a plea bargain never arose. He testified that he was positive that he had never seen the June 2, 1999 letter regarding the plea offer and that no one ever talked to him about the letter or its contents. When asked what he would have done if he had been told about the offer, he responded that he "most likely" would have taken the offer, and shortly thereafter stated, "probably would have took the plea, most likely." Petitioner testified that he left the decision of whether to go to trial in his attorney's hands, because Petitioner knew nothing about the law. (Resp't Ex. G at 6-13.)

On cross examination, Petitioner acknowledged that he had pled guilty once in the past in a case involving drugs and firearms charges. He stated that in that case, he decided to plead guilty after discussions with his attorney, whose name he could not remember, and that he had received probation. Petitioner testified that in the present case, he did not know about the plea offer until his post-conviction counsel told him about it. Id. at 13-21.

The employer and supervisor of Petitioner's trial attorney at the time of the trial

---

[3] Petitioner raised a third claim in his post-conviction motion which is not relevant to the present habeas action. He claimed that appellate counsel was ineffective for not arguing on direct appeal that the trial court improperly precluded evidence that Petitioner had access to a gun on the day of the murder. The motion court rejected this claim, as did the state appellate court.

7

testified that it was clear to him from a conversation he had had with Petitioner's counsel on the day of the verdict that Petitioner's counsel never conveyed the plea offer to Petitioner. The court would not allow this witness to testify as to the content of the conversation he referenced. Id. at 27-28. Petitioner's trial attorney then testified. He stated that after the State made the plea offer about two weeks before trial, he went to the jail where Petitioner was incarcerated and discussed the offer with him. Counsel testified that he explained the offer to Petitioner and explained that if Petitioner were convicted of first-degree murder, he would not be eligible for parole. Counsel further testified that "on a number of occasions" Petitioner said that he understood this and that he wanted to go to trial. Id. at 30-32. On cross-examination, counsel stated that he showed Petitioner the June 2, 1999 letter and reviewed it with him. He also testified that based upon the facts of the case, he told Petitioner that he had a good case to try to get a second-degree murder conviction. The court denied post-conviction counsel's request to recall defense counsel's employer so that the employer could testify as to the conversation he had had with defense counsel that led him to believe that defense counsel had not conveyed the plea offer to Petitioner. Id. at 32-38.

On October 15, 2003, the motion court denied Petitioner's motion for post-conviction relief. With respect to Petitioner's claim that defense counsel was ineffective for failing to convey the plea offer, the court stated, citing state cases, that Petitioner had to demonstrate a reasonable probability that he would have accepted the plea offer instead of standing trial. The court then stated that Petitioner "failed to prove his allegation by a preponderance of the evidence and has not met his burden of proof." The court noted that

8

at trial, Petitioner "strenuously" testified that he did not intend to kill the victim. The court reasoned, "[i]t is highly unlikely given this strong belief and position at trial that [Petitioner] would have accepted a sentence of life imprisonment pursuant to the plea offer when he could have been found guilty of a lesser offense." (Resp't Ex. F at 46-47.) The motion court then noted that Petitioner had "equivocated" at the hearing as to whether he would have taken the plea offer, and that Petitioner had "some familiarity" with the justice system and had pleaded guilty in the past. In sum, the court concluded that Petitioner had not shown a reasonable probability that he would have accepted the offer. Id. at 47.

The motion court also rejected Petitioner's claim with regard to trial counsel's failure to object to the prosecutor's comments on "deliberation" during closing argument. The court noted that the prosecutor had first provided a correct definition of "deliberation" (cool reflection upon the matter for any length of time, no matter how long). The court held that while the prosecutor later described Petitioner's deliberation as including making certain decisions, this portion of the closing argument "could not have resulted in manifest injustice or miscarriage of justice." Thus, reasoned the court, even had an objection been made and sustained, "there would not have been reasonable doubt regarding [Petitioner's] guilt or deliberation." Id. at 49.

On appeal, the state appellate court stated that it agreed with the motion court that it was highly unlikely, given Petitioner's "strong position" at trial that he did not intend to kill the victim, that he would have pled guilty to first-degree murder pursuant to the plea offer in exchange for a life sentence when he could have been found guilty of a lesser

9

offense.  The appellate court also agreed with the motion court's assessment that Petitioner's testimony at the hearing, as to whether he would have accepted the plea offer, was equivocal, adding that as an appellate court it was to defer to the motion court's determination of Petitioner's credibility.  (Resp't Ex. J at 2-3.)  The appellate court also noted that the motion court's reliance on Petitioner's past experience with the justice system, and pleading guilty in the past, in finding that Petitioner did not demonstrate a reasonable probability that he would have accepted the State's offer instead of standing trial.  Finally, noting that defense counsel testified at the hearing that he conveyed the plea offer to Petitioner, the state court of appeals stated, "[a]gain, we defer to the trial court's decision to believe Counsel's testimony over [Petitioner's]."  Id. at 3-4.

With regard to Petitioner's claim that defense counsel was ineffective for failing to object to the prosecutor's comments during closing argument equating deliberation with decision-making, the appellate court concluded that these comments "merely urge the jury to infer deliberation from [Petitioner's] opportunities to terminate the crime."  The appellate court found "no error" in the comments and that defense counsel was not ineffective for failing to object to them.  Id. at 6-8.

## DISCUSSION

**Standard of Review**

Under AEDPA, when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus cannot be granted unless the state court adjudication:

(1)  resulted in a decision that was contrary to, or involved an unreasonable

> application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent but arrives at the opposite result. Price v. Vincent, 538 U.S. 634, 640 (2003); Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413; accord Linehan v. Milczark, 315 F.3d 920, 924-25 (8th Cir. 2003). A case cannot be overturned merely because it incorrectly applies federal law, for the application must also be objectively unreasonable. Wright v. Van Patten, 128 S. Ct. 743, 748 (2008) (per curiam, Stevens, J., concurring).

The factual findings of the state court also may be challenged in a § 2254 petition, but they are subject to "an even more deferential review." Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001). "Factual findings by the state court 'shall be presumed to be correct,' a presumption that will be rebutted only 'by clear and convincing evidence.'" Id. (quoting § 2254(e)(1)). "The standard is demanding but not insatiable; . . . deference does not by definition preclude relief." Miller-El v. Dretke, 545 U.S. 231, 240 (2005).

**Defense Counsel's Effectiveness with Regard to the Plea Offer**

Petitioner claims that his constitutional right to the effective assistance of trial counsel was violated by defense counsel's failure to convey to him the State's plea offer. The Sixth Amendment guarantees a criminal defendant the right to effective assistance of trial counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To succeed on a claim of ineffective assistance of trial counsel, a habeas petitioner must establish both "that counsel's representation fell below an objective standard of reasonableness," and that but for counsel's deficiency there is "a reasonable probability" that the result of the proceeding would have been different. Id. at 688, 694; see also Malcom v. Houston, 518 F.3d 624, 626 (8th Cir. 2008).

It has long and clearly been established that criminal defendants are entitled to effective assistance of counsel during all critical stages of the criminal process. See United States v. Cronic, 466 U.S. 648, 659 (1984). Hill v. Lockhart, 474 U.S. 52, 57 (1985), applied that right, and the corresponding Strickland analysis, to ineffective-assistance claims arising out of the plea process. "A defendant suffers a Sixth Amendment injury where his attorney fails to convey a plea offer. Defense counsel have a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government." Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003); see also Nunes v. Mueller, 350 F.3d 1045, 1052-53 (9th Cir. 2003); Johnson v. Duckworth, 793 F.2d 898, 902 (7th Cir. 1986). "[T]here is no dispute that failure to convey a plea offer is unreasonable performance." Pham, 317 F.3d at 183.

Here, the state appellate court appears to suggest that the post-conviction trial court

elected to believe defense counsel's testimony, rather than Petitioner's, with regard to whether defense counsel conveyed the plea offer to Petitioner. The undersigned is hard-pressed, however, to find record support for this determination by the appellate court. Rather, the trial court concluded that Petitioner did not establish prejudice, that is, did not show that there was a reasonable probability that had the offer been conveyed, Petitioner would have pled guilty. The post-conviction trial court based this conclusion on its belief that Petitioner equivocated on the matter at the post-conviction hearing, on Petitioner's strong position at trial that he did not intend to kill the victim, and on Petitioner's prior experience with the court system. The state appellate court agreed with this reasoning.

This Court finds the state courts' adjudication of this matter somewhat troubling. First, it is not entirely clear that the state courts applied the correct legal standard. While the motion court articulated the correct "reasonable probability" standard (i.e., that Petitioner had to show a reasonable probability that had he been properly informed and counseled, he would have pled guilty), the motion court also noted the "preponderance of the evidence" standard. See Magana v. Hofbauer, 263 F.3d 542, 550 (6th Cir. 2001) (distinguishing "reasonable probability" and "preponderance of the evidence" in this context (citing Williams, 529 U.S. at 405-06) (hypothesizing that a state court holding that the Stickland standard required a prisoner to establish prejudice by a preponderance of the evidence, as opposed to a reasonable probability, would be contrary to established Supreme Court precedent for purposes of § 2254)).[4]

---

[4] In Cronic, the Supreme Court instructed that a presumption of prejudice from counsel's deficient performance would be in order in exceptional "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case

13

It is also somewhat questionable whether the fact that Petitioner maintained at trial that he did not intend to kill the victim showed that he would not have accepted the plea offer. Cf. Griffin v. United States, 330 F.3d 733, 738 (6th Cir. 2003) (holding that habeas petitioner's repeated declarations of innocence did not prove that he would not have accepted a plea offer which was not conveyed to him by his attorney).

Nevertheless, upon review of the entire record, this Court cannot say that the state courts applied Strickland to the facts of this case in an objectively unreasonable manner when they concluded that Petitioner had not established prejudice resulting from counsel's challenged performance. See Underdahl v. Carlson, 381 F.3d 740, 742 (8th Cir. 2004) (explaining that a § 2254 petitioner must show that the state courts applied Strickland to the facts of his case in an objectively unreasonable manner). The motion court, which was also the trial court, was in the best position to assess the credibility of Petitioner's assertion that he "most likely" would have taken the plea offer had it been conveyed to him. The motion court found that Petitioner "equivocated" on this matter, and there is fair support in the record for this finding. In this context, "[i]ssues of credibility are left to the discretion of the state courts." Winfield v. Roper, 460 F.3d 1026, 1035 (8th Cir. 2006), cert. denied, 127 S. Ct. 2256 (2007). "Federal habeas review gives federal courts no license to

---

is unjustified." 466 U.S. at 658. Examples cited include cases in which counsel was "totally absent" during a critical stage of the proceedings, cases in which counsel actively represented conflicting interests, and cases in which counsel entirely failed to subject the prosecution's case to meaningful adversarial testing. Id. at 659-61 & n.28. The Supreme Court suggested that prejudice would be presumed in cases of the same "magnitude." Id. While a cogent argument could be made that the failure of defense counsel to convey a plea offer to the defendant is just such a case, case law does not support this approach; rather, cases involving this situation consider whether prejudice was shown.

redetermine credibility of witnesses whose demeanor has been observed by the state trial [post-conviction] court, but not by them." Perry v. Kemna, 356 F.3d 880, 885 (8th Cir. 2004) (citation omitted). Accordingly, this ground for habeas relief should be denied.

**Prosecutor's Comments during Closing Argument on "Deliberation"**

Petitioner argues that the prosecutor improperly equated "deliberation," the element that separates first-degree murder from second-degree murder, with making decisions, without adding that the jury had to find that Petitioner reflected upon those decisions. Petitioner asserts that this characterization lightened the prosecutor's burden of proof with respect to first-degree murder.

As Respondent notes, Petitioner did not object at trial to the prosecutor's comments or raise the matter in his (Petitioner's) motion for a new trial, thereby limiting review of this claim on direct appeal to plain error review.[5] Respondent argues that this claim was thereby procedurally defaulted in state court, erecting a procedural bar to consideration by the Court of the merits of the claim. Under the doctrine of procedural default, a state prisoner is generally barred from obtaining federal habeas relief on claims that were procedurally defaulted in state court, that is, claims that were not properly presented through "one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

There is a split within the Eighth Circuit with respect to plain error review on direct appeal and procedural bar. One line of cases stands for the proposition that "a properly

---

[5] The Court notes that, on direct appeal, this claim was presented as a claim that the trial court plainly erred in not sua sponte striking the prosecutor's closing argument that "deliberation meant decisions."

15

limited plain error review by a state court does not cure procedural default." See, e.g., Toney v. Gammon, 79 F.3d 693, 699 (8th Cir. 1996). Another line of cases holds that when a state court conducts plain error review, a federal habeas court may also do so. See, e.g., Thomas v. Bowersox, 208 F.3d 699, 701 (8th Cir. 2000); Burns v. Gammon, 173 F.3d 1089, 1095 (8th Cir. 1999) (noting the split of authority); Mack v. Caspari, 92 F.3d 637, 641 (8th Cir. 1996). Under this standard, a federal court "will grant habeas relief only if manifest injustice resulted from the alleged errors." Mack, 92 F.3d at 641 (citation omitted). AEDPA's deferential standard of review would also be applicable in this situation. James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999) (noting that this is the proper standard even when the state appellate court issued a summary decision on plain error review).

Assuming, without deciding, that review by this Court is appropriate, this Court concludes that Petitioner's claim fails on substantive grounds. See Tyler v. Steele, No. 06CV035CDP, 2006 WL 3197349, at *5 (E.D. Mo. Nov. 2, 2006) (holding that court need not decide whether claims that state appellate court reviewed for plain error were procedurally defaulted or whether plain error review by the federal habeas court of them was appropriate, because the claims lacked substantive merit). Upon review of the prosecutor's challenged statements, the Court concludes that there was no error, much less plain error or constitutional error. The prosecutor began by correctly defining "deliberation." The prosecutor pointed to the evidence that Petitioner hit the victim four times, and other evidence from which deliberation could be inferred under Missouri law, and the state appellate court's determination that this was proper closing argument is not

16

unreasonable. Cf., e.g., State v. Tisius, 92 S.W.3d 751, 764 (Mo. 2002) (en banc) (evidence of multiple gun shots may support an inference of deliberation); State v. Buchli, 152 S.W.3d 289, 298 (Mo. Ct. App. 2004) (fact-finder may infer deliberation from the circumstances surrounding the crime).

Moreover, the trial court gave the jury a correct definition of deliberation. In sum, this Court cannot say that the state appellate court's rejection of a claim based upon the prosecutor's explanation of "deliberation" was objectively unreasonable.

**Defense Counsel's Failure to Object to the Prosecutor's Comments on "Deliberation"**

Petitioner argues that trial counsel was constitutionally ineffective in failing to object when the prosecutor incorrectly defined "deliberation." In light of the above discussion on the prosecutor's comments at issue, this Court concludes that the state courts' adjudication of this issue did not involve an unreasonable determination of the facts or an unreasonable application of federal law. See Kinder, 272 F.3d at 554 (holding that state supreme court reasonably applied Strickland to reject claim that defense counsel was ineffective for failing to object to portions of the prosecutor's closing argument which the state supreme court had found were not improper).

## CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the petition of Dennis Cunningham for habeas corpus relief be **DENIED** as without merit.

The parties are advised that they have ten (10) days in which to file written

objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that the failure to file timely objections may result in a waiver of the right to appeal questions of fact.

                                                    */s/ Audrey G. Fleissig*
                                                    AUDREY G. FLEISSIG
                                                    UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of June, 2008.